IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

WARRIOR SPORTS, INC.,          *
successor by merger to BRINE CORP.,
                               *        Civil Action No. 11-1860
          Plaintiff,
                               *
v.
                               *
NEAL GOLDMAN,
                               *
          Defendant.
                               *

*     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

Plaintiff, Warrior Sports, Inc., successor by merger to Brine Corp. ("Warrior") sues

defendant, Neal Goldman ("Goldman") as follows:

### Parties, Jurisdiction and Venue

1.     Warrior is a Michigan corporation with its principal place of business located in

Warren, Michigan.

2.     Goldman is an individual, upon information and belief, residing in Baltimore City,

Maryland.

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are

citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of

interest and costs.

4.     Venue is proper in this Court because defendant Goldman is by information and

belief a Baltimore City resident.

### Common Allegations

5.     Warrior is recognized as one of the sporting goods industry's premier

manufacturers of innovative, high performance, cutting-edge equipment, footwear and apparel, including in particular, for the sports of lacrosse and hockey.

6.      Warrior conducts its business with the aid of significant trade secrets, proprietary and confidential information, including, but not limited to, information regarding its products, processes, know-how, designs, drawings, test data, customer lists, vendor lists, business plans, marketing plans and strategies, and pricing strategy, cost data or other subject matter pertaining to the business of Warrior or its principals or any of its clients, customers, vendors, consultants, licensees or affiliates ("Confidential Data").  This Confidential Data further includes, but is not limited to (a) the detailed processes and materials needed to market and supply Warrior's products; (b) costs, sales by product, and price; (c) the identities and details concerning Warrior's relationships with its customers, vendors and suppliers, including the product preferences of its customers; and (d) Warrior's plans for new products.

7.      Warrior has expended substantial resources, including the efforts of a significant technology, research, marketing and development staff, to develop its Confidential Data, as defined herein, and to train its employees relating to the Confidential Data.

8.      Warrior's Confidential Data is not generally known in its industry.

9.      Warrior's Confidential Data is disclosed only to employees who use such Confidential Data in their work for Warrior.

10.     Warrior's Confidential Data disclosed to its employees is protected by confidentiality, non-compete and non-solicitation agreements for the term of employment and a time period subsequent to termination of employment.

11.     A competitor acquiring Warrior's Confidential Data could take unfair advantage of this information and utilize it to the detriment of Warrior and without the expenditure of years

of effort and resources that Warrior has undertaken to develop the Confidential Data.

12.     In May 2007, Goldman accepted an offer of employment with Warrior (through its Brine Lacrosse Hard Goods Equipments division) as a Product Manager.

13.     In May 2007, Goldman executed an Employee Proprietary Information Agreement that outlined the material terms governing the employment relationship ("Agreement," Exhibit A).

14.     Warrior expended considerable time, money and resources in training Goldman and disclosed Confidential Information to Goldman in connection with the services he performed for Warrior.

15.     Pursuant to the terms of his contract with Warrior, Goldman is prohibited from delivering, reproducing or in any way allowing any of Warrior's Confidential Data "or any documentation relating thereto, to be delivered or used by any third parties without specific direction or consent of Warrior". (Exhibit A, ¶1).

16.     Goldman also agreed that he would not, for a period of two (2) years after the termination of his employment, regardless of the reason for termination, contact any customers or vendors of Warrior or its affiliates by supplying products or offering to supply products to any customer with whom WARRIOR or its affiliates has done any business, or has offered to do business, whether as an officer, director, proprietor, employee, consultant, advisor, agent or otherwise. (Exhibit A, ¶5B).

17.     Pursuant to the terms of his Agreement, Goldman is prohibited from assisting others in soliciting customers or vendors of Warrior in the manner prohibited to Goldman. (Exhibit A, ¶5C).

18.     As part of his employment duties with Warrior, Goldman acquired certain

knowledge about Warrior's customers, including, but not limited to, their needs, product requirements, and pricing.

19.     Goldman's employment with Warrior terminated in April, 2010.

20.     Shortly after terminating his employment with Warrior, Goldman became employed as a Product Manager by Under Armor, Inc., a Warrior competitor, which raised concerns about whether Goldman intended to honor his Agreement with Warrior.

21.     A letter dated June 24, 2010 was sent to Goldman reminding him of his contractual obligations to Warrior and requesting that he honor those contractual obligations (06/24/10 Letter, Exhibit B).

22.     Warrior received certain assurances from Goldman that he was working in apparel only, that he was not working in the lacrosse equipment division for Under Armor, and that he fully intended to honor his contractual obligations to Warrior.

23.     Based on these assurances, Warrior did not pursue the matter further with Goldman at that time.

24.     However, Warrior recently learned, through personal observation of certain of its employees, that Goldman has unequivocally breached his Agreement with Warrior by directly contacting and soliciting business from Warrior's customers, including, but perhaps not limited to Dick's Sporting Goods.

## Count I

## Breach of Contract

25.     Warrior incorporates by reference the foregoing allegations as if fully restated herein.

26.     The Agreement constitutes a valid and binding contract between Warrior and

Goldman.

27.     Goldman's conduct, as described herein, constitutes a breach of his Agreement
with Warrior in numerous ways, including, but not limited to:

        a)      disclosing Confidential Data of Warrior to competitors and other third
                    parties;

        b)      using Confidential Data of Warrior;

        c)      soliciting customers of Warrior; and

        d)      assisting a third party (Under Armor) in soliciting Warrior's customers.

28.     As a result of Goldman's breach of contract, Warrior has suffered monetary
damages and damage to good will, and is entitles to its attorneys fees and costs as the parties'
contract provides, in the amount demanded *infra*..

## Count II

## <u>Misappropriation of Trade Secrets</u>

29.     Warrior incorporates by reference the foregoing allegations as if fully restated
herein.

30.     Warrior's Confidential Data described herein constitutes "trade secrets" under the
Michigan Uniform Trade Secrets Act,  MCLA 445.1901 and/or the Massachusetts Trade Secrets
Act, Annot.. Laws of Massachusetts Chapter 93, § 42 and related common law.

31.     Goldman misappropriated Warrior's trade secrets by acquiring knowledge and use
of those trade secrets and sharing them with a competitor of Warrior.

32.     Goldman's conduct, as described herein, has caused substantial and irreparable
harm to Warrior.

33.     Goldman's conduct, as described herein, was willful and malicious.

34.     Warrior is entitled to multiple and other damages as provided by statute and attorney fees, in the amount demanded *infra*..

## Count III

## Intentional Interference With Business Expectancy and Contract

35.     Warrior incorporates by reference the foregoing allegations as if fully restated herein.

36.     Warrior has a valid and substantial expectancy in the continued sales of its products.

37.     Warrior has a valid and reasonable business likelihood of future economic benefit from the continued sale of its products.

38.     Warrior has established substantial sales of its products as a result of its use of its Confidential Data which it developed over significant time and with the use of substantial resources.

39.     Goldman knew of Warrior's valid business expectancy and Confidential Data.

40.     Warrior has a valid and legitimate business expectation of continued substantial sales of its products, absent Goldman's wrongful conduct.

41.     Warrior has a valid and legitimate business expectancy in the continued relationships with its customers.

42.     Warrior has a valid and legitimate business expectancy in the acquisition of new customers.

43.     Warrior had a valid and legitimate business expectancy that Goldman would not solicit the customers of Warrior for a period of tow years following the termination of his

employment with Warrior.

44.     Warrior had a valid and legitimate business expectancy that Goldman would not disclose Warrior's Confidential Data to others.

45.     Warrior had and continues to have a valid and legitimate business expectancy that Goldman would not, for a period of two years following termination of his employment with Warrior, assist others in soliciting customers of Warrior in the manner prohibited to Goldman.

46.     Goldman's conduct, as described herein, constitutes an intentional interference with Warrior's valid business expectancy and contractual relationships.

47.     Goldman's conduct, as described herein, was willful and malicious.

48.     Goldman's conduct, as described herein, constitutes unlawful and intentional interference with Warrior's valid and legitimate business expectancy, contractual relationships and prospective economic relationships.

49.     As a direct and proximate cause of Goldman's conduct, as described herein, Warrior has suffered damages as demanded *infra*.

## Count IV

## Injunctive Relief

50.     Warrior incorporates by reference the foregoing allegations as if fully restated herein.

51.     Goldman's conduct, as described herein, has resulted in substantial harm to Warrior and is anticipated to lead to future harm to Warrior.

52.     Warrior is likely to succeed on the merits of the claims contained herein.

53.     Warrior will suffer immediately substantial and irreparable injury if Goldman is

not enjoined from continuing to unlawfully use, disclose and misappropriate Warrior's Confidential Data.

54.     Warrior will suffer immediate, substantial and irreparable injury if Goldman is not enjoined from continuing to solicit Warrior's customers in direct violation of his Agreement with Warrior.  The two year time period during which Goldman is prohibited from soliciting Warrior's customers should be tolled during the period of Goldman's flagrant violation of such non-solicitation covenant.

55.     The harm to Warrior substantially outweighs the harm to Goldman if Goldman is not enjoined from continuing to unlawfully use, disclose and misappropriate Warrior's Confidential Data, compete with Warrior and solicit Warrior's customers.

56.     The public interest is best served by enjoining Goldman's unlawful conduct, as described herein, as the enforcement of a valid contractual right.

WHEREFORE, Warrior respectfully requests that this Court award it the following relief:

A.     In response to Counts I - III, that this Court enter judgment for Warrior and against Goldman in the amount of at least $75,000 exclusive of interest and costs, and attorneys fees and multiple damages as provided by contract and statute;

B.     In response to Count IV, that this Court enjoin Goldman, including by issue of preliminary and permanent injunctive relief, from in any way using Warrior's Confidential Data or otherwise continuing to solicit Warrior's customers in direct violation of his Agreement with Warrior.

C.      That in response to all Counts, that this Court award Warrior other just and proper

relief.

<div style="margin-left: 50%;">

/s/ J. Stephen Simms

J. Stephen Simms (#4269)
John T. Ward (#1507)
Marios J. Monopolis (#29177)
Simms Showers LLP
20 South Charles Street
Suite 702
Baltimore, Maryland 21201
Telephone: 410-783-5795
Facsimile: 410-510-1789
jssimms@simmsshowers.com
jtward@simmsshowers.com
mjmonopolis@simmsshowers.com

Warrior Counsel

</div>

OF COUNSEL:

James E. Romzek
Anissa C. Hudy
Warner Norcross & Judd LLP
12900 Hall Road
Suite 440
Sterling Heights, Michigan 48313-1175
Telephone: 248-784-5199
Facsimile:  248-603-9730
Email   jromzek@wnj.com
Email   ahudy@wnj.com