*Neal Goldman*

# BRINE, CORP

## EMPLOYEE PROPRIETARY INFORMATION AGREEMENT

IN CONSIDERATION and as a condition of my employment, or continued employment, by BRINE, CORP ("BRINE"):

1. **Confidentiality.** I agree to keep confidential, except as BRINE may otherwise consent in writing, and not to disclose, or make any use of except for the benefit of BRINE (or its "Principals," as defined herein) at any time either during or subsequent to my employment, any trade secrets, confidential information, knowledge, data or other information of BRINE or its Principals relating to products, processes, know-how, designs, drawings, formulas, test data, customer lists, vendor lists, business plans, marketing plans and strategies, and pricing strategy, cost data or other subject matter pertaining to the business of BRINE or its Principals or any of their clients, customers, vendors, consultants, licensees or affiliates (collectively, the "Confidential Data") which I may produce, obtain or otherwise acquire during the course of my employment, except as herein provided. I further agree not to deliver, reproduce or in any way allow any such Confidential Data or any documentation relating thereto, to be delivered or used by any third parties without specific direction or consent of duly-authorized representatives of BRINE and its Principals. As used herein, *"Principals"* means Warrior, Inc. and

2. **Conflicting Employment: Return Of Confidential Materials.** I agree that during my employment with BRINE I will not engage in any other employment, occupation, consulting or other activity relating to the business in which BRINE or its Principals is now or may hereafter become engaged, or which would otherwise conflict with my obligations to BRINE or its Principals. In the event of my termination of employment with BRINE for any reason whatsoever, I agree to promptly surrender and deliver to BRINE all Confidential Data of BRINE pertaining to BRINE's business, the business of the Principals, or to my employment, and I will not take with me any description containing or pertaining to any Confidential Data which I may produce or obtain during the course of my employment.

3. **Assignment Of Inventions.** I hereby assign and transfer to BRINE my entire right, title and interest in and to all inventions (as used in this Agreement, "inventions" shall include, but not be limited to, improvements, designs and discoveries), whether or not patentable and whether or not reduced to practice, made or conceived by me (whether made solely by me or jointly with others) during the period of my employment with BRINE which relate in any manner to the business, work, or research and development of BRINE, or result from or are suggested by any task assigned to me or any work performed by me for or on behalf of BRINE or any of its Principals. I agree that all such inventions are the sole property of BRINE.

4. **Disclosure Of Inventions: Patents.**

   A. I will disclose all inventions (as defined above) promptly in writing to my immediate superior at BRINE, with a copy to the General Manager, in order to permit BRINE to claim rights to which it may be entitled under this Agreement.

-1-

    B.    I will, at BRINE's request, promptly execute a written assignment of title to BRINE for any invention required to be assigned by this Agreement and I will preserve any such assignable invention as Confidential Data of BRINE.

    C.    Upon request, I agree to assist BRINE or its Principal (at its expense) during and at any time subsequent to my employment in every reasonable way to obtain for its own benefit, patents and copyright for such assignable inventions in any and all countries, which inventions shall be and remain the sole and exclusive property of BRINE or its Principal whether or not patented or copyrighted. I agree to execute such papers and perform such lawful acts as BRINE deems to be necessary to allow it to exercise all rights, title and interest in such patents and copyrights.

**5. Covenant Not To Solicit.** I acknowledge that I owe a fiduciary duty to BRINE not to participate in any business which competes, directly or indirectly, with any business now or hereafter conducted by BRINE or the Principals (the "Business Activities"). Accordingly,

    A.    In the event of my voluntary resignation or termination for cause, I will not, during and for the period commencing with the date hereof and ending on the date that is twelve (12) months after termination of my employment, directly or indirectly, engage in any Business Activities (other than on behalf of BRINE or its Principals) whether such engagement is as an officer, director, proprietor, employee, partner, investor (other than as a holder of less than one [1%] percent of the outstanding capital stock of a publicly traded corporation), consultant, advisor, agent or otherwise, in any geographic area in which the products or services of BRINE or its Principals have been marketed, distributed, sold, or provided.

    B.    I will not, during and for the period commencing with the date hereof and ending on the date that is two (2) years after termination of my employment (regardless of whether that termination is voluntary, for cause, or without cause), directly or indirectly, engage in any Business Activities (other than on behalf of BRINE or its Principals) by contacting any customers or vendors of BRINE or its Principals, or by supplying products, offering to supply products, providing services, or offering to provide services heretofore supplied or provided to any customer with whom BRINE or its Principals has done any business, whether as an officer, director, proprietor, employee, partner, investor (other than as a holder of less than one [1%] percent of the outstanding capital stock of a publicly traded corporation), consultant, advisor, agent or otherwise.

    C.    I will not, during and for the period commencing with the date hereof and ending on the date that is two (2) years after termination of my employment (regardless of whether that termination is voluntary, for cause, or without cause), directly or indirectly, assist others in engaging in any of the Business Activities in the manner prohibited to me.

   D. I will not, during and for the period commencing with the date hereof and ending on the date that is two (2) years after termination of my employment (regardless of whether that termination is voluntary, for cause, or without cause), directly or indirectly, induce employees of BRINE or any of its Principals to engage in any activities hereby prohibited to me or to terminate their employment with BRINE or any of its Principals.

It is expressly understood and agreed that although I consider the restrictions contained in each of clauses A through D, above, to be reasonable for the purpose of preserving the goodwill, proprietary rights and going concern value of BRINE and its Principals and to protect BRINE's and the Principals' business opportunities, if a final judicial determination is made by a court having jurisdiction that the time or territory or any other restriction contained in this Paragraph is an unenforceable restriction on my activities, the provisions of this Paragraph shall not be rendered void but shall be deemed amended to apply as to such maximum time and territory and to such other extent as such court may judicially determine or indicate to be reasonable. Alternatively, if the court referred to above finds that any restriction contained in clauses A through D, above, or any remedy provided in this Agreement is unenforceable, and such restriction or remedy cannot be amended so as to make it enforceable, such finding shall not affect the enforceability of any of the other restrictions contained in this Agreement or the availability of any other remedy.

   6. **Modification.** This Agreement may not be changed, modified, released, discharged, abandoned, or otherwise amended, in whole or in part, except by an instrument in writing, signed by BRINE. I agree that any subsequent change or change in my duties, salary or compensation shall not affect the validity or scope of this Agreement.

   7. **Entire Agreement.** I acknowledge receipt of this Agreement, and agree that with respect to the subject matter thereof it is my entire agreement with BRINE, superseding any previous oral or written communications, representations, understandings, or agreements with BRINE or any officer or representative thereof.

   8. **Severability.** In the event that any paragraph or provision of this Agreement shall be held to be illegal or unenforceable, such paragraph or provisions shall be severed from this Agreement and the entire agreement shall not fail on account thereof, but shall otherwise remain in full force and effect.

   9. **Successors And Assigns.** This Agreement shall be binding upon my heirs, executors, administrators or other legal representatives and is for the benefit of BRINE, its successors and assigns.

   10. **Governing Law.** This Agreement shall be governed by the laws of the State of Massachusetts.

   11. **Captions.** Captions to paragraphs of this Agreement have been included solely for the sake of convenient reference and are entirely without substantive effect.

   12. ~~**Third Party.** It is expressly agreed that the Principals are intended third party~~ beneficiaries of this Agreement and may directly enforce the terms and provisions hereof.

13. **Attorneys Fees.** I agree that in the event I am found to have violated any provision of this Agreement, I shall be responsible for the costs and attorneys fees incurred by BRINE (or any of its Principals) in connection with the enforcement of the terms and provisions hereof.

Date: 5/11/07

_Neal Goldman_
{Employee Name}

1396258-1

Case 1:11-cv-01860-RDB   Document 1-1   Filed 07/06/11   Page 5 of 5

